# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| STEVE MCGHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-2454 STA-dkv |
| | ) | |
| SECURITY FIRE PROTECTION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

Plaintiff initiated the instant lawsuit *pro se* on July 21, 2006. On February 15, 2008, Defendant, Security Fire Protection, Inc., moved for summary judgment as to all claims brought by Plaintiff. Plaintiff failed to respond to the dispositive motion. On March 20, 2008, the Court ordered Plaintiff to show cause as to why this matter should not be dismissed for failure to prosecute. Plaintiff responded to the Show Cause Order on April 1, 2008. The Court will consider Plaintiff's Response to the Show Cause Order in ruling on Defendant's Motion for Summary Judgment. For the reasons set forth below, Defendant's Motion is **GRANTED**.

## BACKGROUND

The following facts are undisputed unless otherwise indicated. Plaintiff filed this employment discrimination lawsuit against Defendant alleging race and age discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA"). Plaintiff alleges that Defendant discriminated against him based on his race and age when it failed to promote him to the position of Service Division Project Manager. Specifically, Plaintiff alleges race discrimination because no minority employees were

interviewed for the position. He alleges age discrimination because a younger candidate was selected for the position, and someone told him that the company was looking for younger people for the future.

Defendant hired Plaintiff as an apprentice in 1986, and Plaintiff worked his way up to journeyman status and then foreman status. In 1998 Plaintiff pulled a knife on a coworker, Bill Morrison. Plaintiff testified in his deposition that he did this because Morrison had harassed him and disrespected him by putting grease on the doors of Plaintiff's company van and turning the mirrors around on the van. Defendant terminated or suspended Plaintiff's employment following this incident. After undergoing psychological review, Plaintiff returned to work in June of 1998.

Plaintiff is employed as a foreman in Defendant's Daywork Department. A substantial segment of this department's business involves the servicing of cold storage warehouses. Installing, maintaining, and servicing fire sprinkler systems in cold storage freezers is a specialized field that requires highly technical training and experience. The fire protection system in a cold storage warehouse is a special system that has no water in the piping. The systems with the brand name Protecto Wire are designed with special heat detection devices that, when triggered, allow a valve to open and water to run through the pipes.

The Daywork Department Manager, Darin Griffis, determined that the department would be more profitable and efficient if it had a project manager who could take over the handling of fixed price small contracts in Daywork. Griffis, along with Brad Chafin, Vice President of Operations, and Jimmy Waller, the Service Manager, discussed which qualifications would be necessary for the Service Division Project Manager position. They determined that a qualified

candidate would need substantial experience with installing, servicing, and repairing the Protecto Wire sprinkler systems for cold storage freezers and superior knowledge of Protecto Wire freezer panels that control the sprinkler systems located in cold storage facilities. They also determined that a qualified candidate should be trustworthy, have the respect of the men in the field, be able to handle office as well as technical and service skills, have a proven track record of completing jobs at or under budget, and have good organizational skills, including the ability to manage multiple labor crew, order and schedule deliveries, supervise all installations, track costs on the computer system, attend pre-construction meetings, and review time sheets.

After determining the qualifications for the Service Division Project Manager position, Chafin, Griffis, and Waller, each created a "wish list" of candidates whom they believed would be qualified for the position. After discussing their wish lists, the three men agreed on four candidates to interview for the position. Plaintiff was not listed as a potential qualified candidate on the wish list of either Chafin, Griffis, or Waller. Therefore, Plaintiff was not selected to be interviewed for the position.

Chafin, Griffis, and Waller each testified that Plaintiff's age and race had no bearing on Plaintiff's not being included on their wish lists. Jimmy Waller testified that he did not place Plaintiff on his wish list because he did not believe that Plaintiff had the necessary qualifications. Specifically, Waller did not believe Plaintiff to have the necessary freezer experience or the technical knowledge of the Protecto Wire panel. Furthermore, Waller testified that he did not believe Plaintiff was a good candidate to lead and command the respect of the men in the department because Plaintiff had pulled a knife on a coworker. Darin Griffis testified that he did not include Plaintiff on his list because he did not believe Plaintiff had the necessary experience

3

and because of Plaintiff's past behavioral problem when he pulled the knife on a co-worker. Griffis also stated that he did not believe Plaintiff had the ability to lead and to command respect. Brad Chafin testified that he did not include Plaintiff on his wish list because he had not worked with Plaintiff and had no knowledge of Plaintiff's work experience.

After considering the employees on their wish lists, Chafin, Griffis, and Waller selected four candidates to interview for the position of Service Division Project Manager–Bill Haack (age 52), Mark Rhodes (age 52), Bill Morrison (age 31), and Hal Bryant (age 49). Chafin, Griffis, and Waller selected Bill Haack for an interview because Chafin and Griffis believed Haack was one of the top contract foremen in the company, had significant freezer experience, was an extremely hard worker, commanded the respect of the men in the field, and was an experienced leader. They selected Mark Rhodes because they believed he was the most experienced service technician, had substantial freezer/Protecto Wire experience, commanded the respect of the men in the field, had been a service manager for two years, was an experienced leader, and had attended Protecto Wire training. They selected Hal Bryant for an interview because they believed he was one of the top Daywork foremen, had substantial freezer/Protecto Wire experience, was an extremely hard worker, was a top of the line problem solver, had attended Protecto Wire training, had previously been a project manager for Defendant, and because the jobs that he worked on were profitable. Chafin, Griffs, and Waller selected Bill Morrison for an interview because they believed he had substantial freezer/Protecto Wire experience, was one of the top freezer technicians in the company, had good customer relations and people skills, commanded the respect of the men in the field, was very bright, was a quick thinker and the sharpest thought processor in the Daywork Department, and had also attended

4

Protecto Wire training.

Chafin, Griffis, and Waller conducted interviews with Mark Rhodes, Hal Bryant, and Bill Morrison in January 2005. They did not interview Bill Haack because he had accepted another position within the company. After discussion, Chafin, Griffis, and Waller ruled out Hal Bryant because he had a reputation of being hard on the men, he tended to be unorganized, and because he had previous problems when he had been a project manager. They ruled out Mark Rhodes because he had problems with organizational skills, sometimes lacked initiative, and had some complaints from customers when he had previously worked in the office.

During the discussions of the candidates, Chafin, Griffis, and Waller determined that it would be positive from a business cost and efficiency standpoint to have a project manager who could take over for Jimmy Waller when he retired and who would not be retiring at the same time as Waller. All of Defendant's signatory employees are eligible for retirement, and typically do retire, at age fifty five. Chafin, Griffs, and Waller ultimately selected Bill Morrison to serve as the Service Division Project Manager because of his outstanding experience in freezer/Protecto Wire, because he was very sharp, and because of his longevity to succeed Jimmy Waller. They testified that Morrison was the best qualified person for the position.

Plaintiff testified that after Defendant promoted Morrison, Brad Chafin told Plaintiff that the company was looking for younger people to take over when the older guys leave. Chafin denies that he ever told Plaintiff or anyone else that Morrison was selected because of his age, or that the company was looking forward to replacing the older guys with younger guys. Plaintiff then filed the instant case against Defendant alleging discrimination based on age and race. Defendant has now moved for summary judgment as to Plaintiff's claims..

## SUMMARY JUDGMENT STANDARD

Rule 56 (c) provides that a

> judgment . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.[1]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[2] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[3] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[4] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[5] Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[6] In this Circuit, "this requires the nonmoving party

---

[1] Fed. R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[2] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[3] *Celotex*, 477 U.S. at 324.

[4] *Matsushita*, 475 U.S. at 586.

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[6] *Celotex*, 477 U.S. at 322.

to 'put up or shut up' [on] the critical issues of [the] asserted causes of action."[7]  Finally, the "judge may not make credibility determinations or weigh the evidence."[8]

## ANALYSIS

### A. Race Discrimination

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[9]  In order to establish a prima facie claim of racial discrimination under Title VII, a plaintiff must prove four elements: 1) that he is a member of a protected class; 2) that he was qualified for the job; 3) that he suffered an adverse employment decision; and 4) that he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees."[10]  If the plaintiff makes his prima facie case, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions.[11]  If the employer meets this burden, the plaintiff must show by a preponderance of the evidence that the reasons offered by the employer were actually a pretext for discrimination.[12]  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all

---

[7] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[8] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[9] 42 U.S.C. § 2000e-2(a)(1) (2008).

[10] *Di Carlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (citing *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

[11] *Tex. Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[12] *McDonnell Douglass*, 411 U.S. at 804.

times with the plaintiff."[13]

Plaintiff argues that he was subject to racial discrimination because no minorities were interviewed for the position of Service Division Project Manager. It is undisputed that Plaintiff is a member of a protected class, suffered an adverse employment decision, and that Defendant promoted a person outside the protected class to the position of Service Division Project Manager. Plaintiff was one of approximately seventy field men who were eligible for consideration for the position, therefore, the Court will assume that Plaintiff has shown that he was otherwise qualified for the position. Thus, the court determines that Plaintiff has met his burden of showing a prima facie case of racial discrimination.

The burden then shifts to Defendant to articulate a legitimate nondiscriminatory reason for its actions. The Court finds that Defendant has carried this burden. Brad Chafin, Darin Griffis, and Jimmy Waller testified that Plaintiff's race had absolutely no bearing on the fact that Plaintiff was not on their wish lists and did not make the first round of cuts. They testified that one of the main requirements for the Service Division Project Manager position was substantial freezer/Protecto Wire experience, and they did not interview Plaintiff for the position because he did not have the necessary freezer/Protecto Wire experience. Jimmy Waller testified that Plaintiff lacked the freezer experience and knowledge of the Protecto Wire panel to do the job. He stated that he was not aware of Plaintiff ever working on or troubleshooting a Protecto Wire panel. Nor was he aware of Plaintiff training employees or customers on Protecto Wire panels. Furthermore, Waller did not believe that the men would respect Plaintiff as their manager due to the incident when Plaintiff pulled a knife on a fellow employee. Darrin Griffis also testified that he did not believe Plaintiff was qualified for the position because he lacked the necessary experience and because of his past behavioral problem. Finally, Plaintiff testified in his deposition that he has never been on a freezer inspection or installed Protecto Wire panel on his

---

[13] *Burdine*, 450 U.S. at 253 (citing *Bd. of Tr. of Keene State Coll. v. Sweeny*, 439 U.S. 242, 25 n. 2 (1978)).

own without assistance from someone else. Plaintiff stated that he had only worked on two jobs involving Protecto Wire freezer panels and was not the lead man on either job. Also, Plaintiff admitted that he has never been to a Protecto Wire training class, nor has he conducted any training on the system to show customers or employees how to operate it.

Bill Morrison, on the other hand, had substantially more freezer/Protecto Wire experience. Prior to being promoted to Service Division Project Manager, Morrison's primary job responsibility was working on freezer/Protecto Wire systems. He handled installations, inspections, troubleshooting, service and repair, customer calls and questions, and customer and employee training on freezer/Protecto Wire systems. Morrison had more than five years experience handling freezer/Protecto Wire jobs and had been on between fifty and one hundred such jobs. Additionally, between 1999 and 2005, he was out of town approximately six months out of each year doing freezer/Protecto Wire work. Morrison had also attended a Protecto Wire training class in Boston in 2000. Based on these facts, the Court finds that Defendant has articulated legitimate non-discriminatory reasons for its decision not to interview Plaintiff for the position. The person who was selected for the position, Morrison, was, in Defendant's opinion, simply the better candidate for the job.

Under the *McDonnell Douglas* framework, the burden then shifts back to Plaintiff to show that these reasons were merely pretext for discrimination. The Court finds that Plaintiff has not met this burden. Plaintiff's Response does not address the issue of pretext or purport to show that Defendant's reasons for not interviewing him were a pretext for discrimination. In the Response, Plaintiff alleges that he was denied training, harassed, and subjected to unequal discipline. None of these issues were pled in the Complaint, thus they are not properly before the Court at this time. As to discrimination based on failure to promote Plaintiff, Plaintiff takes issue with the qualification of "respect from the men in the field." He notes that Darin Griffis was suspended from employment for misappropriation of company resources. Plaintiff appears to argue that he was treated differently because Griffis was hired back after this incident and no

9

one questioned his respect from men in the field. Contrarily, Plaintiff was not considered for the position of Service Division Project Manager in part because Chafin, Griffis, and Waller thought he would not command the respect of the men in the field due to the knife-pulling incident. The Court finds, however, that this is not enough to rebut the reasons given by defendant, and Plaintiff has, therefore, failed to prove that Defendant's rationale for not interviewing him for the position was a pretext for discrimination. Because there is no genuine issue for trial as to whether Defendant discriminated against Plaintiff based on his race, summary judgment is appropriate.

**B. Age Discrimination**

Under the ADEA, when a plaintiff alleges he has been discriminated against because of his age, the employer is liable only if the plaintiff's age actually motivated the employer's decision.[14] In other words, "the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'"[15] Many Courts of Appeals, including the Sixth Circuit, have employed a modified version of the *McDonnell Douglas* framework used in Title VII cases to analyze ADEA claims based on circumstantial evidence.[16] The test is that the plaintiff 1) was at least forty years old at the time of the alleged discrimination; 2) suffered an adverse employment action; 3) was otherwise qualified for the position; and 4) the successful applicant was a substantially younger person.[17] The ultimate issue in ADEA cases, though, is whether the plaintiff's age was a factor and made a difference in the employment decision.[18] If the plaintiff makes out a prima facie case of age

---

[14] *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

[15] *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co.*, 507 U.S. at 610).

[16] *Id.* (citing *Ackerman v. Diamond Shamrock Corp.*, 670F.2d 66, 69 (6th Cir. 1982)).

[17] *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998); *Ackerman*, 670 F.3d at 69.

[18] *Ackerman*, 670 F.3d at 70.

discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision.[19] An employer may make subjective employment decisions for any reasons–especially when a management level job is involved–as long as they are not discriminatory.[20] Once the defendant "makes such a showing, the burden then shifts back to the plaintiff to show that the employer's reasons are pretextual."[21] The plaintiff can do this by showing either that the proffered reasons 1) had no basis in fact; 2) did not actually motivate the decision; or 3) were insufficient to motivate the employer's decision.[22]

Based on this standard, the Court finds that there is no genuine issue of material fact as to whether Defendant discriminated against Plaintiff because of his age. As to the first factor, Plaintiff was born on October 2, 1955, and was therefore within the protected class when the alleged discrimination occurred in April 2005. Regarding the second factor, the failure to promote Plaintiff qualifies as an adverse employment action. As to the third factor, the Court will again assume that Plaintiff was otherwise qualified for the position. Plaintiff's claim fails under the fourth factor, however. While the successful applicant may have been a substantially younger person, three out of the four candidates considered for the position of Service Division Project Manager were Plaintiff's age or older. This fact dispels any conclusions of age discrimination in the selection process. Thus, Plaintiff cannot make out a prima facie case of age discrimination based on his not being selected to interview for the position.

Even assuming Plaintiff had established a prima facie case, his age discrimination claim still could not succeed. The evidence shows that Plaintiff was not interviewed for the position because he did not have the requisite freezer/Protecto Wire experience and because he had pulled

---

[19] *Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001).

[20] *See Ackerman*, 670 F.3d at 70 (citing *Walter v. KFGO Radio*, 518 F. Supp. 309, 1314 (D. N.D. 1981); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 n.6 (1st Cir. 1979)).

[21] *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 184 (6th Cir. 2004).

[22] *Id.*

a knife on a co-employee. As discussed above, Plaintiff has not shown that these reasons had no basis in fact, did not actually motivate the decision, or were insufficient to motivate the decision not to interview him for the position. Plaintiff bears the burden of proving that his age was the cause of the adverse employment action, and he has failed to carry that burden. Therefore, the Court finds that summary judgment is appropriate.

## CONCLUSION

Plaintiff has failed to show a genuine issue for trial as to his race and age discrimination claims. Defendant's Motion for Summary Judgment is, therefore, **GRANTED**.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 23rd, 2008.